UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:15-cr-175(S1)-J-39JBT

KYLE ADAM KIRBY

_____

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S SECOND MOTION TO SUPPRESS PHYSICAL EVIDENCE**

The United States of America, by and through the undersigned Assistant United States Attorney, files this response in opposition to defendant's Second Motion to Suppress Physical Evidence, filed in this case on April 27, 2016 (Doc. 39). For the reasons set forth below, the Court should deny defendant's motion.

**Factual Summary**

A substantial portion of the chronology of the investigation of this case is set forth in the criminal complaint (Doc. 1), filed on October 28, 2015, and is incorporated by reference herein. On June 9, 2009, a Panasonic notebook computer was issued to defendant for use in his patrol car during the course of his duties as a police officer with the Live Oak Police Department (LOPD). As an LOPD officer, defendant was an employee of the City of Live Oak (the "City"). At all times relevant to this case, this patrol car computer was the property of the City, and bore a tag that read "Property of City of Live Oak, Fixed Asset Control 02731".

In October 2015, the LOPD maintained a Dell common-use desktop computer in an LOPD office used by defendant and other officers. At all times relevant to this case, this desktop computer was property of the City and bore a tag that read "Property of City of Live Oak, Fixed Asset Control 02914". This desktop computer was used by defendant and others at the LOPD during the course of their work as police officers.

The City has a written policy regarding the appropriate use of its computer and network resources by its employees. By its own terms, the policy "appl[ies] to the access of the City network and the use of computer resources at any location, from any device, via a wired or wireless connection." Importantly, the policy states, among other things, as follows:

> Users should have no expectation of privacy while using City-owned or City-leased equipment. Information passing through or stored on City equipment can and will be monitored. Users should have no expectation of privacy while using any electronic device through a City run computer network.

*The City of Live Oak, City Personnel Policies and Procedures Manual*, Section 25. As a City employee, defendant was subject to this policy. On October 21, 2010, defendant was put on notice of and acknowledged this City policy and all other policies in the City personnel manual by executing a document titled "The City of Live Oak, City Personnel Policies and Procedures." Both the patrol car computer and the common-use desktop computer were governed by this City policy since both are property owned by the City.

The LOPD also has a written policy regarding use by its officers and employees of computers and electronic mail, referred to as the "Live Oak Police Department Electronic S.O.P." (the "LOPD SOP").  As an officer with the LOPD, defendant was subject to this policy.  On pages 806-3 and 806-4 of the LOPD SOP, under the headings "Mobile Data Computers (MDC's or notebook)", "Responsibilities", paragraph III.D.1.b. states, in pertinent part, that "They [supervisors] shall conduct inspections of the notebook computers assigned to their personnel at least once a month to assure that they are being maintained properly."  On page 806-6, under the headings "Mobile Data Computers (MDC's or notebook)", "Use Of Notebook Computers", paragraph III.D.2.c.(5) states, in pertinent part, that "[d]epartment notebook computers will be subject to inspection by supervisors."  On page 806-9, under the headings "Mobile Data Computers (MDC's or notebook)", "Inspections", paragraph III.D.5.a. states, in pertinent part,

> Notebook computers which are the property of the Live Oak Police Department shall be subject to routine periodic inspection by supervisors, Administrative Services Division Commander and Staff Inspection Members.  The computers will be inspected for routine care and maintenance purposes, as well as to insure the integrity of the software that is loaded in them.  Members should be aware that all files contained in the Departmental computers are subject to review by personnel conducting said inspections.

On March 16, 2012, defendant executed a document titled the "Live Oak Police Department Electronic S.O.P. Policy Manual Sign In Sheet."  On July 22,

2013, defendant signed a sheet titled "Policy Revision: Computers/Electronic mail SOP-806", "Instructor: Lt. Keith Davis", "1 Hour Training" that was attached to a document titled "SOP-806, Computers/Electronic Mail", "Effective: 08-01", "Review:  August/Yearly", "COMPUTERS/ELECTRONIC MAIL."  Thus, defendant was on notice of and acknowledged this LOPD SOP.  The patrol car computer issued to and used by defendant was governed by the LOPD SOP.

On October 22, 2015, FBI agents and other officers traveled to Live Oak, Florida to execute a federal child pornography search warrant at defendant's residence.  The case agent, FBI Special Agent (SA) A. Beccaccio did not personally participate in the execution of the search warrant but rather went to the LOPD office for the purpose of making contact with defendant.  Once at the LOPD, SA Beccaccio met with the LOPD Chief, Alton K. Williams.  During the meeting, Chief Williams was told that a search warrant was to be executed at defendant's residence.  Chief Williams advised that he would cooperate with the FBI in every aspect of the investigation, and further stated the FBI was welcome to search and inspect any of the items owned by the LOPD that were in defendant's possession.  Chief Williams agreed to have defendant contacted and directed to report to the LOPD office.

A short time later, defendant arrived at the LOPD office and knocked on Chief Williams' office door.  Defendant entered the office and took the seat in the chair directly in front of Chief Williams' desk.  SA Beccaccio was also present in the room during this encounter.  Chief Williams told defendant that he

(defendant) would be on immediate suspension pending an investigation into "child porn" and requested that defendant surrender his duty firearm, badge and identification card. Defendant surrendered these items without incident. After a brief interview with SA Beccaccio and FBI Task Force Officer (TFO) J. Watson, defendant invoked his constitutional right to remain silent and the interview was terminated.

A short time later, Chief Williams spoke with defendant outside the presence of SA Beccaccio and TFO Watson. Chief Williams asked defendant about the contents of his computer media, and defendant gave a particular answer in response. Shortly thereafter, this conversation was terminated.

During the search of defendant's residence, no computers or other electronic media were found. A search based on the consent expressly authorized by Chief Williams was conducted of a marked Dodge Magnum patrol car used by defendant and owned by the City. LOPD Detective Jason Rountree, acting at the express direction of Chief Williams, authorized the FBI to take possession of the LOPD Panasonic patrol car computer that had been obtained from within the patrol car that defendant had used. Detective Rountree executed an FBI FD-26 "Consent to Search" form that authorized this inspection and search. A subsequent search of this patrol car computer revealed numerous images depicting minors engaged in sexual explicit conduct.

On October 25, 2015, defendant telephoned another LOPD officer, Officer Derick Slaughter. Defendant asked Slaughter to drive to the LOPD office, use

defendant's LOPD logon, access defendant's account on a common-use desktop computer, and delete all of defendant's files. Defendant explained that he did not want law enforcement looking at all his "business," and that he had personal files on the computer. Defendant directed Slaughter to delete all his files. After the deletion of these files, defendant told Slaughter that he was to bring a shredder to defendant's residence.

Later that evening, Officer Slaughter went to the LOPD office, accessed the LOPD common-use computer, which was already logged in, and began looking at files under defendant's profile. During this review, Officer Slaughter found an image of a prepubescent nude male child. The image was not pornographic in nature, but its discovery caused Officer Slaughter to stop his review. Later, he contacted Chief Williams and reported this information.

On October 27, 2015, Chief Williams advised SA Beccaccio that defendant maintained an account profile on the common-use desktop computer located at the LOPD office. Chief Williams took steps to secure this computer and advised SA Beccaccio in substance that he would provide it to the FBI for subsequent search. On October 28, 2015, SA Beccaccio obtained written authorization and consent from Detective Rountree, who acted at the express direction of Chief Williams, to take custody of and search this computer. Detective Rountree provided this computer to SA Beccaccio for a subsequent forensic analysis in Jacksonville. A search of this desktop computer revealed

numerous images depicting minors engaged in sexual explicit conduct containing in defendant's computer profile.

## Memorandum of Law

In his motion, Kirby argues that this Court should suppress the evidence contained in the LOPD patrol car computer and the LOPD common-use desktop computer used by defendant that was obtained by consent on October 22, 2015 and October 28, 2015, respectively because (i) the searches of the computers were "invalid due to [defendant]'s expectation of privacy in said computer[s]" and (ii) LOPD Detective Rountree "lacked authority to consent to said search[es]," and (iii) the evidence recovered from the two City computers constitutes "fruit of the poisonous tree" under *Wong Sun v. United States*, 371, U.S. 471 (1963) that was "begat from the illegal questioning of defendant by Chief Williams on October 22, 2016". Doc. 39 at 3-4. Defendant is wrong on all accounts.

**I.   Defendant did not have a reasonable expectation of privacy in either the patrol car computer issued to him or the common-use desktop computer, both of which were property of the City of Live Oak.**

The Fourth Amendment prohibits "unreasonable searches and seizures" by government agents, including government employers and supervisors. U.S. Const. amend. IV; *see O'Connor v. Ortega*, 480 U.S. 709, 715 (1987). This prohibition "protects an individual in those places where [he] can demonstrate a reasonable expectation of privacy against government intrusion." *United States v. Cooper*, 203 F.3d 1279, 1283 (11th Cir. 2000). Further, "only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge

7

the validity of a government search." *Id.* at 1284. To establish a violation of his rights under the Fourth Amendment, a defendant must first prove that he had a legitimate expectation of privacy in the place searched or the items seized. *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978). In order to prove a legitimate expectation of privacy, a defendant must show that his subjective expectation of privacy is one that society is prepared to accept as objectively reasonable. *See California v. Greenwood*, 486 U.S. 35, 39 (1988). As the Eleventh Circuit has noted:

> The party alleging an unconstitutional search must establish both a subjective and an objective expectation of privacy. The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable.

*United States v. Segura-Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006) (quotation marks and citations omitted).

The Supreme Court has held that public employers may constitutionally conduct workplace searches without a warrant and without probable cause when there are reasonable grounds to suspect work-related misconduct. *O'Connor*, 480 U.S. at 725-26 (plurality opinion). Some government employees may have a legitimate expectation of privacy in their offices or in parts of their offices such as their desks or file cabinets. *See id.* at 716-18; *Shields v. Burge*, 874 F.2d 1202, 1203-04 (7th Cir. 1989) (concluding that the holding of the *O'Connor* plurality governs). However, it is well settled that office practices, procedures, or

regulations may reduce legitimate privacy expectations.  *United States v. Simons*, 206 F.3d 392, 398 (4th Cir. 2000); s*ee O'Connor*, 480 U.S. at 717.

In general, government employees who are notified that their employer has retained rights to access or inspect information stored on the employer's computer have no reasonable expectation of privacy in the information stored therein.  For example, in *Simons*, computer specialists at a division of the Central Intelligence Agency learned that Simons, a CIA employee, had been using his desktop computer at work to obtain pornography available over the internet in violation of CIA policy.  *Id.* at 396.  The specialists accessed Simons' computer remotely without a warrant, and obtained numerous images of child pornography that Simons had stored on his hard drive.  *Id.*  These images were turned over to the FBI.  *Id.*  Simons moved to suppress this search, but the Fourth Circuit held that the CIA division's official Internet usage policy eliminated any reasonable expectation of privacy that Simon might otherwise have in these image files.  *Id.* at 398.  The policy stated that the CIA division would "periodically audit, inspect, and/or monitor [each] user's Internet access as deemed appropriate," and that such auditing would be implemented "to support identification, termination, and prosecution of unauthorized activity."  *Id.* at 395-96.  In light of this policy, the Fourth Circuit found that Simons did not retain a reasonable expectation of privacy "with regard to the record or fruits of his Internet use," including the images of child pornography that he had downloaded.  *Id.* at 398.

9

Similarly in this case, defendant did not have any legitimate expectation of privacy with respect to the use and contents of the patrol car laptop computer issued to him by the LOPD or the common-use desktop computer at the LOPD office. He was fully aware of the City's policy that stated that he has no expectation of privacy in any City-owned equipment. Further, the policy expressly provided that all information "passing through or stored on" City equipment would be accessed and monitored. He was also fully aware of the LOPD SOP that expressly provided that "[d]epartment notebook computers will be subject to inspection by supervisors." In light of these limits placed on his computer use by the City and the LOPD through their respective express written policies, both of which he had notice, defendant had no legitimate expectation of privacy in the contents of the patrol car computer or the LOPD common-use desktop computer. *See United States v. Thorn*, 375 F.3d 679, 683 (8th Cir. 2004), *vacated and remanded*, 543 U.S. 1112 (2005 (for consideration of sentence in light of *United States v. Booker*), *aff'd,* 413 F.3d 820 (8th Cir. 2005), *cert. denied*, 546 U.S. 1009 (2005); *Biby v. Board of Regents*, 419 F.3d 845, 850-51 (8th Cir. 2005) (university policy stating that computer files and emails may be searched in response to litigation discovery requests eliminated computer user's reasonable expectation of privacy); *United States v. Angeline*, 281 F.3d 1130, 1134-35 (10th Cir. 2002) (rejecting claim of reasonable expectation of privacy in data an employee downloaded from the internet to a state university's computers when the university had an express policy that

reserved the right to randomly audit Internet use); *Simons*, 206 F.3d at 398 (concluding that government employee had no legitimate expectation of privacy in files downloaded from the Internet when government employer had express policy limiting computer usage to official government business and permitted random audits of computer usage to ensure proper use of government resources); *cf. United States v. Slanina*, 283 F.3d 670, 676-77 (5th Cir.) (upholding search but determining that employee had legitimate expectation of privacy in contents of office computer when government employer had not disseminated any policy limiting personal use of the computer and employee's computer was password-protected), *vacated on other grounds by* 537 U.S. 802 (2002), *on appeal after remand* 359 F.3d 356, 358 (5th Cir. 2004) (per curiam) (reaffirming validity of workplace search); *Leventhal v. Knapek*, 266 F.3d 64, 73-74 (2d Cir. 2001) (determining that an employee had a legitimate expectation of privacy in the contents of his office computer but noting the absence of a policy explicitly limiting the scope of privacy in the computer); *Wasson v. Sonoma County Junior College Dist.,* 4 F. Supp. 2d 893, 905-06 (N.D. Cal. 1997) (public employer's computer policy giving the employer "the right to access all information stored on [the employer's] computers" defeats an employee's reasonable expectation of privacy in files stored on employer's computers); *American Postal Workers Union v. United States Postal Service*, 871 F.2d 556, 560 (6th Cir. 1989) (concluding that employees had no reasonable expectation of privacy in lockers in light of policies allowing locker inspections); and *United*

*States v. Bunkers*, 521 F.2d 1217, 1219-21 (9th Cir. 1975) (same, noting language in postal manual stating that locker is "subject to search by supervisors and postal inspectors").

With respect to the common-use desktop computer, it is noteworthy that defendant also provided his logon information to another individual and directed that individual to access his profile and destroy evidence contained therein. This act of sharing access to the computer files, *no less with another sworn law enforcement officer*, further bolsters defendant's waiver and lack of any expectation of privacy in the contents of files on the computer. *See United States v. Norman*, 448 F. App'x 895, 897 (11th Cir. 2014) (allowing other users access to shared computer files negated any reasonable expectation of privacy therein); *United States v. Durdley*, 436 F. App'x 966, 968 (11th Cir. 2011) (defendant did not have reasonable expectation of privacy in thumb drive left in a county-owned, common-use computer); and *United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007) (holding that a defendant did not have reasonable expectation of privacy in the contents of his laptop, which contained child pornography, when he connected the laptop to his military base's computer network).

Accordingly, defendant's motion to suppress the evidence contained in the patrol car computer and the LOPD common-use desktop computer on privacy grounds should be denied.

## II. Chief Williams and Detective Rountree each had actual and apparent authority to consent to search the patrol car computer and the common-use desktop computer.

The Fourth Amendment guarantees people the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. IV.  In the absence of a warrant, "a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 134 S.Ct. 2473, 2482 (2014) (citation omitted).  One exception is that a warrantless search is lawful when a person with actual or apparent authority voluntarily consents to law enforcement officers conducting the search.  *United States v. Thomas*, 2016 WL 1273016 (11th Cir.) at 8; *United States v. Watkins*, 760 F.3d 1271, 1279 (11th Cir. 2014); *Bates v. Harvey*, 518 F.3d 1233, 1243 (11th Cir. 2008).  A third party has actual authority to consent to a search "if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes." *United States v. Andrus*, 483 F.3d 711, 716 (10th Cir. 2007) (citation omitted); *see also United States v. Matlock*, 415 U.S. 164, 170 (1974) (confirming that "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared").  Even where actual authority is lacking, however, a third party has apparent authority to consent to a search when an officer reasonably, even if erroneously, believes the third party possesses authority to consent.  *Andrus*, 483 F.3d at 716 (citation omitted).

13

In his motion, defendant claims that Detective Rountree "lacked the authority to consent to" the search of the patrol car computer, presumably because the LOPD SOP states that "[t]he Assistant Chief or his/her designee shall be responsible for the overall management of all computer hardware and related software" and Detective Rountree was not the written designee of the Assistant Chief." Doc. 39 at 4, 8. Defendant is mistaken. As noted above, the LOPD SOP states several times that LOPD notebook computers are subject to inspection by supervisors. Moreover, the City's internet policy stated that "information passing through or stored on City equipment can and will be monitored." Detective Rountree was a supervisor, and as such possessed actual authority to consent to search of the patrol car computer and the common-use desktop computer. Detective Rountree acted at the express direction of Chief Williams in providing consent. Certainly, as the duly elected head law enforcement officer in charge of the LOPD, Chief Williams also had actual authority to provide consent for the search and to designate an official to execute any written consent forms. Assuming *arguendo* that neither Chief Williams nor his designee, Detective Rountree, had *actual* authority to consent, SA Beccaccio's reliance on their *apparent* authority was reasonable, and the FBI's consensual seizure and search of the patrol car computer and the common-use desktop was constitutionally permissible. Accordingly, defendant's argument must fail.

### III. The consent to search the City computers used by defendant was not based on any statements made by defendant but was <u>independently given by Chief Williams and Detective Rountree.</u>

Defendant's claim that the consent to search provided by the LOPD officials was somehow tainted by the statements made by defendant about the contents of the two City computers used by him has no basis in fact or law. Before defendant ever arrived at the LOPD office on the morning of October 22, 2016, Chief Williams advised that the FBI was welcome to search and inspect any of the items owned by the LOPD that were in defendant's possession. Subsequently, this consent was reduced to writing through the execution of the consent forms by Detective Rountree, acting at the direction of Chief Williams, on October 22, 2015 and October 28, 2015. Defendant confuses the facts in this case with a situation in which a *defendant himself* gives consent after invoking his right to remain silent[1]. To the contrary, this case involves third party consent, which cannot be tainted by any alleged Fifth Amendment violation involving a defendant's statements.

Chief Williams will testify that his decision to give consent to search the two City computers used by defendant was not based on any statements made by defendant. There is no logical or legal connection between defendant's statements and the consent to search the two computers used by defendant.

---

[1] If those were the facts in this case, defendant's argument would still fail. Even after a defendant has invoked his right to remain silent, the police may request his consent to search his effects, and if the defendant consents, there is no *Miranda* violation. *United States v. Hidalgo*, 7 F.3d 1566, 1568 (11th Cir. 1993) (noting that "[a] consent to search is not a self-incriminating statement" (citations omitted)).

Because the consents did not flow from defendant's statements, they cannot constitute "fruit" of any "poisonous tree." So, even assuming *arguendo* that there was some "taint" based on defendant's invocation of rights, the absolute lack of causality would effectively dissipate the taint[2]. *See United States v. Delaney*, 502 F.3d 1297, 1309 (11th Cir. 2007) (discussing attenuation under *Wong Sun*) (citation omitted). The written consents stand on their own as a reflection and evidence of the independent decision made by Chief Williams, albeit one that was made prior to defendant ever making any statements.

---

[2] Alternatively, even if there was some "taint" caused by defendant's post-invocation statements, the evidence in the two City computers would still not be subject to suppression based on the inevitable discovery doctrine. *Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004) ("for evidence to qualify for admission under this exception to the exclusionary rule, there must be a reasonable probability that the evidence in question would have been discovered by lawful means, and the prosecution must demonstrate that the lawful means which made discovery inevitable was being actively pursued prior to the occurrence of the illegal conduct"). Because they knew that defendant had used a computer to download child pornography at his residence, the FBI and the LOPD would have taken steps to search any computer media associated with defendant that was owned by the City. Indeed, they did just that.

WHEREFORE, the United States respectfully requests that this Court deny defendant's Second Motion to Suppress Physical Evidence.

        Respectfully submitted,

        A. LEE BENTLEY, III
        United States Attorney

By:   *s/ D. Rodney Brown*
        D. RODNEY BROWN
        Assistant United States Attorney
        Florida Bar No. 0906689
        300 N. Hogan Street, Suite 700
        Jacksonville, Florida 32202-4270
        Telephone:  (904) 301-6300
        Facsimile:   (904) 301-6310
        E-mail: rodney.brown@usdoj.gov

**U.S. v. KYLE ADAM KIRBY**               Case No. 3:15-cr-175(S1)-J-39JBT

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    James A. Hernandez, Esq.

        *s/ D. Rodney Brown*
        D. RODNEY BROWN
        Assistant United States Attorney